May it please the court, my name is Kevin Crabtree, appearing for petitioners Tomasa Jimenez, Mayra Valerio, and Marisa Valerio. Your honors, this case involves the denial by the attorney general of a cancellation of removal application on the basis of hardship. Today I hope to address the court's jurisdiction over legal and constitutional issues within this context, as well as the legal and constitutional error of failing to consider an entire qualifying relative of the lead petitioner, failing to identify the correct standard for hardship in the attorney general's analysis of the derivative petitioner's cases. And I'm also prepared to address the exhaustion challenge raised by the respondent. Your honors, whether the court has jurisdiction over the legal and constitutional issues arising within this context is not really at issue anymore in this court's jurisprudence. What is at issue is the precise contours of what constitutes a legal challenge or a constitutional challenge in these cases. This court in Alvarez-Figueroa held that the court retains jurisdiction over the legal issue of whether the correct standard of hardship was identified at the outset by the agency. Is that the first issue you want to raise? Well, your honor. Whether the I.J. applied the correct standard? I believe that the clearest way for the court to resolve the matter is that, your honors. For that reason, I intended to approach that issue first. But I could also go to the issue of riskiness, or I could go to the exhaustion issue if the court prefers. Well, as far as I'm concerned, I think the issue is this. Well, as you indicated, you know, to me, it's a close question. In some cases, it may be yours is one of them. Whether or not it's really a legal question or whether some of the cases say, you know, just attack on the exercise of the of the agency's abuse, just cloaked in the form of a constitutional challenge. So it's hard sometimes to distinguish between those cases. But let's. Why don't you address on the merits? Why do you think? Well, I guess one of your arguments, at least, is that the I.J. here and this was a decision adopted by the board. Right. That's correct. So one of your arguments is that the I.J. really didn't follow the legal dictates of Racine's. Right. That's correct. Now, the problem is, of course, there's the other case, I guess, is Monreal, which, you know, is on the other side. So the question is, is this a Monreal case or Racine's case? Is that what it comes down to? Yes, Your Honor. The the court does have jurisdiction to analyze whether this case fits within the parameters of Monreal. In Mendez Castro, the court held that it does not have jurisdiction to address the application of the statute of the attorney general's discretionary authority. However, we would note that in that case it was addressing Monreal. And the challenge by the petitioner was that her children had showed they had compelling special needs in school. Tell us, first of all, what wrongful standard did the I.J. apply? Your Honor, in Monreal, the board for the first time held a specific set of facts did meet the outer limit of the hardship standard. There, the petitioner was a single mother of limited means of six children, and she was solely responsible for their financial and familial support. Her entire immediate family resided in the United States with lawful status. In the present case, Your Honor, the facts are materially indistinguishable. The lead petitioner is a single mother of ‑‑ Well, to me, there's one very distinguishing factor, and that is this. I think in that case, the mother was a substantial economic contributor to the family's economic needs. It's not the sole contributor. Here, like the mother, is not. Isn't that a big distinction? Well, Your Honor, it's not a material distinction because the basis of the board's decision in Monreal wasn't the fact that the mother solely that she was the supporter, but more directly that her inability to support the children in Mexico. And so it really is an irrational distinction for the IJ here to have said, well, in Monreal, the mother had a potential of ‑‑ she actually owned a car inspection business, and she may have been able to support the family in Mexico at a reduced standard. Here, the petitioner is completely physically disabled. Now, the question is, now, does that mean, you know, a question of how the standard is applied or, you know, not applying the standard? Well, Your Honor, I think that the court has jurisdiction to address a situation where the facts are materially indistinguishable, and yet the result reached by the agency is the same ‑‑ or, excuse me, is the opposite. No two cases will be identical, but there is some inquiry the court has to inquire and conduct about the materiality of the factual distinctions, even within the context of a purely legal question. Is there any other misapplication of a legal rule that you contend went on in this case? Well, Your Honor, to go back to my initial point, I think that the most clear error is the failure to consider Luis, the 18‑year‑old incarcerated son, within the context of the ‑‑ within the hardship analysis. The failure to consider all relatives in this case is a legal error, and the interpretation applied by the agency was one in which ‑‑ Well, Your Honor, you know, there's lots of ways. I forgot the exact comment the I.J. made, but, you know, there's several ways to read his comment. One way to read it is, well, you know, the mothers, I mean, just can't contribute too much to the welfare of somebody who's serving a 40‑year sentence in prison, right? Isn't that what it comes down to? I mean, that's one way to look at, you know, the I.J.'s, I'll say, finding. Well, Your Honor, the I.J. failed to ‑‑ I think the most telling thing is that he failed to consider any evidence actually submitted in support of the hardship for that relative. But what evidence can there be? I mean, we all know, you know, if someone's in San Quentin here, I mean, what can you do? You can visit them once a week or something like that, but, you know, I mean, if that's contributing to the welfare? Well, Your Honor, extreme hardship, if you can't do that, I mean, maybe it is, but on the other hand, it's hard to say if, you know, an I.J. concludes it's not an extreme hardship that it's an abuse of discretion, is it? Well, he didn't actually conclude that this relative wouldn't suffer the hardship, Your Honor. He didn't make any conclusions. He simply discarded his circumstances from the analysis completely at the outset. He didn't even discuss the declaration filed by this relative. There were plausible exceptional circumstances. And your position, I guess, is you can't treat that as sort of a, you know, like a shortcut finding. Well, Your Honor, the petitioner is entitled to more than a shortcut before the agency. And the agency is required under this Court's precedent to consider all potentially relevant hardship factors, including the existence of relatives. And its failure to do so is very similar, Your Honor, to, for example, this Court has found it has jurisdiction to consider whether a grandchild is a qualifying relative. And we would submit that the question of whether a particular person is a qualifying relative is not materially distinguishable from whether that relative, once qualified, must be considered under the statute. Well, if the incarcerated son were the only child here, you cannot argue that that would be a basis for us overturning what the BIA had done. And are you referring, Your Honor, to the fact that he is now over 21 years of age, or the – I think that the error of the legal error at the inception of the Court's precedent in Alvarez-Figueroa requires that the Court grant the petition for review and to remand to the agency for reconsideration of the hardship. You want to save some time? I would, Your Honor. Thank you very much. Ms. Grose. Good morning. My name is Monica Anton, appearing on behalf of the Attorney General. In response to the petitioner's argument concerning Luis, first of all, it's not exhausted. And that's apparent from the board. What's not exhausted? The claim that the I.J. did not consider the hardship to Luis, the incarcerated son. Ma'am, that microphone, I think, is adjustable. Thank you. A little shorter than Mr. Crabtree. The brief to the board and the motion to reconsider really focus on the hardship to the two United States citizens' sons. So that argument that they're raising about the hardship to Luis was never brought before the board. And it's not clear to the board that they're contesting that the I.J. didn't address that. Secondly, the I.J. did consider the hardship to Luis. He does note some heart-rending issues, I believe were his words, with regard to Luis and the separation that he would endure when his mother returns to Mexico. And the I.J. is not -- When you say considered, is there like a finding on that? Well, he does summarize it in the testimony. And let me just quote you in a language. On page 112 of the record, the immigration judge noted, quote, heart-rending issues with regard to her oldest boy, and there will undoubtedly be some kind of emotional and moral separation and hardship as a result of any removal or voluntary departure, which would occur on behalf of his mother. So the I.J. may not have explicitly referenced Luis's declaration, but he's not required to. He is presumed to have considered all the evidence submitted before him, and the statement does reflect that he did consider the hardship to Luis. So the government submits that the petitioner's argument is really just a quarrel with the immigration judge's balancing of the evidence, and that's a nonreviewable discretionary determination. In terms of applying the legal standard, the I.J. said several times he referred to the fact that, well, you know, I can't find these medical conditions to be serious conditions. He repeated that several times throughout his opinion. But I don't think the law of the BIA requires that only serious medical conditions can be considered, does it? Well, the board's decisions on hardship are more guidance. So the immigration judge has the discretion to consider how is that medical condition going to affect the qualifying relatives. So whether it's serious, the level of gravity of the medical condition is within the immigration judge's authority to determine and how it will ‑‑ how Ms. Menezes ‑‑ Well, my point is this. I mean, he seemed to say, well, because they're not serious, I'm not going to consider them. I don't think he said that he wouldn't consider them. I think that he said that he doesn't have enough evidence to determine what the future effect will be based on ‑‑ I don't have ‑‑ there's not enough evidence to show that they're serious. That's what he said. Right. And what he was saying by that is that they appear to be under control, and he doesn't have enough evidence because the petitioners did not submit the evidence. It's sort of like short cut fines. You've got enough, huh? Well, the IJ is presumed ‑‑ What you said might be okay, but it's not what he said, right? Well, the IJ is presumed to have looked at all the evidence of medical hardship. And throughout the ‑‑ But the IJ finds it also. He does. And he did summarize the testimony. And throughout the transcript, he asked, do you know how serious this medical condition is? Do you know how it will be treated? Do you know if the child will grow out of it? And he looked at the evidence and determined that there simply wasn't enough evidence. So that's a burden of proof question, that the petitioners did not carry their burden of proof. And the IJ said that, found that the petitioners did not carry their burden of proving this level, the requisite level of hardship based on the medical conditions. And that's a discretionary determination, again, that's unreviewable by this court. The immigration judge went through a thorough analysis of the hardship factors in this case. And he is not required to explicitly mention every single piece of evidence and how it weighs on the hardship determination. So all of these arguments, this factual debate that we're discussing, falls within the nonreviewable discretionary determination of the immigration judge. And for that reason also, the court lacks jurisdiction to consider the board's denial of the motion to reconsider because it's simply a challenge to that underlying discretionary determination. So the court's reasoning in Fernanda is finding a motion to reopen unreviewable. When that motion to reopen challenges the underlying hardship determination applies equally, if not more so, to motions to reconsider. Well, at least as far as the hardship factors are concerned, this case factually is very similar to the Racines. So but the I.J. came to the opposite conclusion in this case that the board came to in Racines. And I suppose one way to defend that said, well, you know, it's an exercise of discretion  But on the other hand, as Mr. Crabtree argues, you know, you can point to several parts of the opinion where he seems to have latched on to the wrong, I'll call it, legal standard to apply. Which is a reviewable question of law, right? Whether he committed a legal error is. But whether he misapplied Racines is not. And we're talking again about a factual distinction. And as you pointed out before, the distinction is that Ms. Jimenez is dependent on her children rather than the other way around. And that is a distinction that the I.J. has the discretion to make. The board's decision in Racines is not a legal test, a mathematical legal test. It's guidance. And the I.J. considered that guidance. And he determined that under the facts of this case, the petitioner simply had not met the required hardship. And that's a nonreviewable discretionary determination. Well, I think we understand your argument. All right. Thank you. May I answer any more questions? No. Do you have any questions? I have none. Thank you. Okay. Thank you. Thank you very much. All right. Any rebuttal? Thank you. Your Honors, the I.J.'s decision expressly excludes from consideration the 18-year-old child, Louise, until after the conclusion regarding hardship. For example, at page 99 of the record, he says suffice to say that he is incarcerated and will be incarcerated for what appears to be a substantial period of time, seemingly rejecting him from consideration. At page 110, Your Honors, he says, Thus, really before this Court is a respondent with two children that are 17 years of age and 15 years of age United States citizens. So this, Your Honors, we feel rebuts the presumption of consideration of Louise's circumstances in this case, in particular also because there's no discussion of his declaration. Your Honors, Your Honor raised the point of the reference to a serious medical condition in the case of the daughters Myra and Mauricia. That's the same legal error the I.J. made in Alvarez-Figueroa. In that case, he said that a showing of unconscionability was required. In this case, the I.J., his entire analysis of the hardship circumstances of the daughters was only whether the children had serious medical conditions, and then he stopped. That was it. And that has been expressly rejected by the Board in the matter of Montreal. It's not a necessary showing. So it's a very similar type of legal issue. And just regarding exhaustion, Your Honors, the exhaustion doesn't require that each issue be argued extensively. It only requires that the agency be put on notice. The agency cannot seriously contend that Louise's hardship was not the issue. One of the issues in the brief to the Board, she did, a petitioner in her brief, did reference the fact of incarceration and the circumstances of her son, Louise. Thank you very much, Your Honors. All right. Thank you. Thank both counsel for your argument. And this case then is submitted for decision.
judges: Tashima, Thomas, Stafford